The next case is Godinez v. CBS. Counsel? Peter Appleton for the Plaintiffs' and Appellants, Your Honor. At least you got Louise's name pronounced right. I've heard it Godinez and the rest of it, but we've got Godinez as the correct one. This case has got three elements or three aspects to the appeal that I wanted to talk about. The first one is, of course, the age discrimination. The second one is what they did with the accrued benefits under the plan. And the third one, of course, is my Rule 60 motion. I think that if your honors, I assume that everybody's looked at the Judge Murphy's decision in Cooper v. IBM, which was just rendered, which we submitted to everybody on September the 4th. Everything that Judge Murphy identifies as being wrong with the cash balance plan for IBM is applicable here in spades. My clients basically were people that were vested in the CBS defined benefit plan, the traditional defined benefit plan, and CBS changed the rules and put them into the cash balance plan. And rather than leaving the accrued benefits, which had been defined as a certain amount per month, as we pointed out in the briefs, they basically reduced that to what they contended was the lump sum value and started everybody out with that in terms of their opening balance in terms of this particular plan. But you said it was a lump sum. It was not a lump sum? Pardon me? You said they contended it was a lump sum. Yes, they did. It was not a lump sum. Well, it was a lump sum, but they calculated it. They looked at it and they said, here's your benefit at age 65. We're going to use a seven percent factor and we're going to conclude this is what your benefit is worth and this is what we're going to start you with. So they basically took away what was an accrued benefit. It was supposed to be, if you look at page 195 of their supplemental explanation. I just don't understand that exactly. If I up until now have an accrued benefit in an accrued benefit plan. Right. And the plan is canceled. Okay. The plan can't be canceled. You have an accrued benefit. That's about a half truth. There's nothing that says players can't eliminate their pension plans. They can. They indeed can. So the plan is canceled. Okay. They still have to pay. Let's assume that. Please. And you you would be able to retire perhaps 10 years from now under the plan terms. Okay. Now, if the plan is terminated, is it your position that they have to pretend you're there for 10 years and look at your situation 10 years later? Or is your accrued benefit whatever you've accrued as of now and, of course, reduced actuarially back to current values? No. My contention is accrued benefit means if they've projected that you've accrued $1,700 a month in pension benefits when you're 65, they have to pay you $1,700 per month when you're 65. You're saying then that it is illegal to reduce it to present value and pay out the account. It's a violation of the law, yes. I say that. That's a violation of the plan. What's your best case that you cannot terminate a pension plan with an accrued benefit plan without and reduce it to present values? Well, I think that there's no case that says you can't reduce it to present values. There's the use case, which basically is the U.S. Supreme Court case, that says that the accrual means what it means in a defined benefit plan is a monthly benefit when you retire. Yes, and the present value of that monthly benefit is X. Well, it can be X or it can be Y. It depends on who calculates it, too. It depends on the discount rate, of course. But let's say it's X. Okay. And you're saying that the Supreme Court and other law that you can point to sometime or that you can point to in our stuff, I take it, says that you can't say, okay, this is what it was. It would be $1,700 per month commencing at 65. We're going to reduce it to present value since you're only 55, and the lump sum of that is X. Now, you can argue about whether the discount rate should be 7 percent, 10 percent, 3 percent, 2 percent. Of course, you can argue about that. Assuming for the moment the discount rate's not wrong, and you're saying you can't do that. You can't do that. You can't discount it to present value. You can't do that without the consent of the beneficiary. You can't do it. I understand. And your law on that is? Well, my law is the use case, which is cited in the briefs, which basically, and I think also if you look at Judge Murphy's opinion, he cites some cases in there, too, about the same thing, what accrued benefit means. Well, what does happen if they terminate the plan? You have to give them what? Well, they can terminate the plan for the future. Yeah. And what do you do with the people who are there who are going to be eligible in 10 years for $1,700 a month? What do they get? Do they wait the 10 years? Yeah, they wait 10 years, and they get the $1,700 a month. Even if the company goes out of business? That's correct. The plan is separate from the company. Okay. Counsel, in the IBM case, the court said that IBM could have terminated the defined benefit plan and moved to a defined contribution plan. Correct. What does that do to your argument? It doesn't do anything to my argument. They could have done that here, too, and they didn't do it. And then the court says, well, but there's all kinds of reasons for not doing that. You have it credited as a tax payment or something like that. And IBM didn't do it. And CBS didn't do it. Instead, they say, we're going to take this cash balance equivalent, which is basically the same as a defined contribution plan, but it's a defined as a defined benefit plan, and we're going to put this element into our combined plan in lieu of what we have. It's the same thing that happened in IBM. In fact, IBM is a better case for the employer than here because IBM told all the employees, hey, you can choose. You can stay in the old plan or come to the new plan. It's your choice. And if that choice had been made here, we wouldn't be here because I would have told my clients, you have no standing if you have a right to stay in the old plan. I don't understand how he got to make that decision. Counsel, doesn't there have to be a decrease in the benefit in order for there to be a violation of ERISA? In the accrued benefit. Right. Yes, but how do you know what that is if you just say, if I can define it as reduce it to present value right now? That's the point. How do you, whose obligation is it to prove that there has been a decrease? Well, I think it's the company's obligation to show, and they've argued the whole time there's been no, they have not reduced the accrued benefits. And they can't, they say under the plan. Is it the company's obligation to show that there has been no decrease in benefits? It's the company's obligation or the plan's obligation to pay the accrued benefit when the employee is, when the beneficiary is 65, unless they show that they did something else that was agreed upon. What is the violation that you're asserting? What's the ERISA violation that you're asserting in this case? Well, it's the fact that they reduced the accrued benefits. Exactly. Okay. And whose obligation is it to show that the accrued benefit was reduced? Well, I think that they have an, the plan has an obligation not to reduce the accrued benefits. What case authority are you relying upon to say that for an ERISA violation to be shown, the plan has to show that it has not reduced the benefit? Well, I don't have a particular case on that other than the Hughes case, which says you can't do it. But there are. And the IBM case that says you can't do it. Can't do what? You can't reduce the accrued benefits. Exactly. But there has to be a showing that the benefit has been reduced before you get to that, right? Okay. But I think in this case, when they say we're going to reduce it to present value, that's a reduction. When they say we're going to use 7 percent. Can they reduce it to present value or calculate the present value? Well, if you look at the excerpt for the record at page 195, which is a document that CBS sent in their own, this is their supplemental excerpt, the 10th to Mr. Godinez, basically saying here's your benefit and here's what we've done with it. Do they say it's reduced? Lump sum. I don't know if they use the word reduced. I don't think so. But they say we've used a factor of 7 percent, which is different than what the IRS uses, to come to a lump sum. Has the IRS withdrawn that? Not that I know of. Let me ask you a question. Sure. Now you seem to be talking about percentages. Before, you seemed to be more absolute. You seem to be saying, well, if you're entitled to $1,700 a month, or you were when you reached 65, if the employer said, look, I'll tell you what I'm going to do instead. I'm going to put $8 million into a lump account just for you. That's no good, right? No, I think that would be if you didn't say I'm going to use the money to pay you the $1,700 a month, or am I going to give you $8 million as a lump sum calculation of $1,700 a month in 10 years? I don't understand. If the employer said that, the employee would be dumb if he said I won't accept it. Right. Well, that's the question. So that you could have a lump sum that might be worth more. Well, the employer could say, look, I'll start paying you the $1,700 a month now. He could, but instead of that, he says to you, as Judge Fernandez said, look, I'm going to give you a lump sum of $8 million. This is worth, by any reasonable calculation, double what $1,700 a month is. Okay. Would that be a reduction? No, I don't think so. Okay. Is there any amount that might be equal to what $1,700 a month is worth? If they start paying $1,700 a month now, I suppose. No, no. A lump sum can be greater than the value of $1,700. The answer is no. There is a sum that can be greater, but there's none that can be equal. That's correct. Well, that's a new form of mathematics. That's what Judge Murphy basically says in the IBM case is, hey, from an economic sense, that makes sense, the argument, the employer's argument. But it's not legal. Economists recognize that. Well, then it wouldn't be legal to give him the $8 million either. Pardon me? It would not be legal to offer him or give him the $8 million instead of the $1,700. If he accepted it. No, no. If they just give it to him, that would not be legal. No, I think that's wrong, Judge, because I think if you calculated the $1,700 a month out from the present value, based on present, let's say, actuarial stuff, currently, and didn't reduce it anything, I think that would be probably illegal. I think that would be the accrued benefit, if they paid him the $1,700 a month. Starting today, you said. Yeah. Somebody said $1,700. To make it okay, they'd have to start it today. Is that what you're saying? No, no. Somebody said you get $1,700 a month. Starting at 65. No, when you're 65. Right. And your presumed lifespan at that time is X. Right. And X times $1,750 a month, or 17, if they gave it to him that today, I don't think that would be a reduction. But if they bring it back to present values on the theory that interest is going to accrue, as it does now, at at least 1 percent, if they discount it back on the theory that it will grow at 1 percent, that's no good. That's correct. Okay. I understand. I understand what you're saying there. I understand. I just want to make it clear. The other aspect, of course, is the impact that this change had on these people, which I think is basically conceded by CBS. And the last aspect of the argument was the Rule 60 motion, which the denial of which prevented us from maybe developing some of the evidence that we could have gotten as to their motivation and what they knew at the time they adopted this plan in terms of what effect it would have on various groups. Let me ask you about Judge Murphy's opinion. I gather that his main point was that the new kind of plan, never mind the accrued benefit, the new plan is not any good. Cash balance aspect. He talks about two aspects of the new plan. They made two amendments. Cash balance aspect is no good. Now, was IBM a wear away? Was IBM a what? A wear away. Did it have a wear away? Was it a wear away situation? I don't know. Okay. So I just that's I think everything else is in the briefs. All right. Thank you very much. May it please the Court. My name is Steve Spencer. I am here on behalf of CBS Corporation and the other defendants. To go right to the point, the issues that were raised in the summary judgment motion involved three issues, two under the Employee Retirement Income Security Act and one under the Age Discrimination and Employment Act. The first issue, which the Court has already addressed this morning, is the question of an accrued benefit. And I'd like to clear up a couple of misunderstandings. First of all, the plan document itself says that when, as a result of making this change, the accrued benefits of these plan participants will not be reduced. And we see that in the introductory language to the plan as well as in plan section 3G. That language is the same kind of proof that was offered on behalf of Bell Atlantic in a case called Corcoran v. Bell Atlantic in which the Third Circuit said that was sufficient proof to show that there was no reduction in the accrued benefit. I'd also like to point out that in connection with the statement that Mr. Appleton referred the Court to, the supplemental appendix at pages 195 and 196, there was a fund the future statement that was given to each of the plan participants. This statement was intended to demonstrate to the participants and explain to the participants what the result of the changes would be as a result of this plan. And it explained at great length at 195 over to 196 how the company would establish an opening account balance for each plan participant and that that opening account balance would be equal to the lump sum value of the benefit that had already accrued under the prior defined benefit final average pay formula. And Mr. Appleton is correct that it says that we will use a 7 percent interest assumption. But if you turn to the next page, it says, however, if the interest rate changes when you retire, okay, if it is lower when you retire so that the lump sum value increases, you will get the higher amount. And because a cash balance plan is a defined benefit plan, if they want to take that in the form of an annuity when they retire, they will get it in the form of an annuity. And if it was worth $1,700 a month when they retired previously, they will get $1,700 a month at normal retirement age. Roberts. Now, if the 7 percent does not turn out to be a realistic discount factor, it will be adjusted. It will be adjusted to reflect, as the law requires, to use the interest rate at the time of the distribution. And if you were in today's environment with the interest rates down, you would be a winner because your lump sum value would be worth more money today. And CVS said you will get that, and that's indeed what they delivered. And I think that that is consistent with what 204G requires. 204G simply says you cannot reduce an accrued benefit, a benefit that has been earned to date. It does not guarantee the right to continue to accrue benefits under the old final average pay defined benefit formula. And it does not have one of these, it doesn't have a wear-away, and that precludes the wear-away problem. Yes. In fact, this is what we call an A plus B plan. We have an opening account balance, okay, which is independent. You get that opening account balance and you start to accrue benefits under the new cash balance plan immediately. And so you get whatever your old benefits were worth plus whatever you accrue going forward. This is very different from the IBM plan and the cases that were discussed in the Cooper case. And I might add. How is it different? Because in IBM, first they had a pay equity case, and second of all, their plan was very different from the plan that we have here. Theirs was not an A plus B plan, all right? Was there a wear-away provision? There were wear-aways. There were effective wear-aways in that plan, in the IBM plan. There are not here because of the A plus B formula that we have here. But I might also add that the arguments that are now being brought up under Cooper v. IBM were not raised in plaintiff's opening brief and therefore should be deemed waived. They were mentioned by defendants in the court below. At that time, we cited two cases, and in fact, they are still the only cases that deal with the issue of age discrimination under Section 623i. Counsel, what arguments are you saying that the plaintiffs are making here that were not made in the opening brief? Okay. The argument that is being made here, and in Cooper v. IBM, is that somehow there is an age discrimination claim under Section 623i of the Age Discrimination and Employment Act. The arguments that were made in the court below was that there was a violation of 623a of the Age Discrimination and Employment Act. These are very different issues. There were a lot of issues that had to be briefed before this Court, and frankly, we didn't address those issues, the 623i issues, because plaintiffs never raise them in their briefs. But notwithstanding that, in the court below, Cooper v. IBM is not a new theory. It had been addressed by other district courts and, in fact, had been addressed by two courts. And in fact, the Cooper case involves ERISA, ERISA Section 204b1h, otherwise known as 29 U.S.C. 1054b1h. That's a parallel provision to what we find in Section 623i of the Age Discrimination and Employment Act. There are differences in the language. And there's one other parallel provision which is found in Internal Revenue Code Section 411b1h. All of those sections are intended to be read similarly, but there are differences in the language. The only two courts that have considered the questions under 623i have ruled against the plaintiff's proposal or proposition in this case. Those two cases are Engers v. AT&T and Eaton v. Onan. Eaton v. Onan is a reported case at 117F2nd812. It's a Southern District of Indiana case. It was decided in 2000. Engers v. AT&T is a slip opinion. It appears in Civil Action No. 98-3660. It's out of the District of New Jersey. It was decided in June of 2001. It was issued by Judge Politik. Both of these cases take quite a lengthy opportunity to review the purposes of 623i and to analyze what the purposes are and how it applies. And if you read the Eaton v. Onan case, which I commend to you, you will see an extensive discussion of 623i, and the Court comes to two conclusions. Counsel, in the opening brief, the plaintiffs did discuss both the ADEA and the ADEA and the ERISA theory. They did — their theories under ERISA were limited to 204G, a reduction of an accrued benefit, and a breach of fiduciary duty. Their claims under the Age Discrimination in Employment Act were limited to section 623a, a disparate impact theory, which is a very different theory than the Cooper case. But if I might, I'm prepared to go ahead and address the issues raised by the Cooper case, because in Engers v. AT&T, the case that has looked at those issues, they came to the conclusion that 623i is not violated by cash balance plans in the way they work. Now, let me — it takes a little bit of background here, and I apologize for doing that, but a cash balance plan works as the following. Basically, all participants receive a hypothetical account. And in that hypothetical account, they are given a pay credit plus an interest credit. That pay credit is a percentage of pay. All employees got 2 percent of pay as the basic pay credit. The plaintiffs in this case, because they were older than 41, got an additional benefit. They got transition credits. And those transition credits were an additional half a percent to 6.5 percent of compensation added to their account. So they did better than younger employees under the plan. They did better. I think the district court, that was found or decided. But what's not clear to me is additional percentage was put in. The Cooper, if you will, type argument is, well, if they put in money when you're 35, it has longer to grow until you reach 65. They put in when you're 55, it has 10 years to grow as opposed to having 30 years to grow. Ergo, it turns out to be just because it only has that long to grow, and everybody knows the longer you go, the more interest you get. It used to be anyway. Okay. So they say, well, that's what violates the age discrimination provisions for Now, you folks say, well, but we're putting in anywhere from an extra half to 6 percent, was it? Depending on who it is. About 6.5 percent. Okay. We're putting in this number for these folks who are over 40. Right? That's correct. Actuarily, that demonstrably offsets the fact of the younger person accruing interest for a longer time. No, it does not, Your Honor. But let me go back to the Cooper case and Eaton v. Onan and Engers v. AT&T, which address this issue. The questions that were confronting those courts were, what does it mean in 6, not 623A, but in, well, Eaton and Engers deal with 623A. They say, what does it mean when the statute says you shall not reduce the rate of benefit accrual because of age? And what the court does is they look and say, what does it mean, reduce the rate of benefit accrual? How do we understand what the rate of benefit accrual looks like? And they look at the rest of the statute and they find no definition of that phrase. So they look to the title. Judge Hamilton begins with the title of that section. And he says, look, it talks about the accrual of benefits not ceasing upon the attainment of normal retirement age. And he goes to look at the legislative history. And what he discovers and spells out in his decision is that the legislative history makes clear that what Congress was trying to do in 623 and its parallel provisions was to make sure that if somebody continued to work beyond normal retirement age, that they would continue to approve benefits. But Judge Hamilton went even one step further. He says, even if you disagree with my interpretation that 623A only applies to pre-normal retirement age or post-normal retirement age accruals, even if you take the next step and say we need to measure the rate of benefit accrual to make sure that there's no reduction, there is nothing in the statute that would require you to measure that by the change in the annuity that would otherwise be payable at normal retirement age. Let me give you a couple of examples. And I think, Judge Fernandez, you picked up on the key point that plaintiffs argue. Plaintiffs argue that if I give $10,000 in a cash balance account to a 30-year-old and I give another $10,000 to somebody like me who's 50 years old in a cash balance account, that when we look at the normal retirement, the annuity that will be payable to me and that 30-year-old at normal retirement age, and we'll assume for purposes of this example that it's 65, that the annuity that I will receive will be less than the annuity that the 30-year-old. And the answer is that's correct. But we're not measuring age. It has to be the cost of age. What we're measuring there is the difference in years to pay out. Well, that's very interesting, and it sounds right. Okay. I understand that. I'm right in this. I understand that argument, that it's like the Ninth Circuit cases that say you've got to be keen on age for it to be a violation. But that doesn't tell me why I should describe any significance to the extra half or 6.5%. The extra half or 6.5% would have to be calculated. What we were saying is the proper analysis for determining the rate of benefit accrual is to focus on the pay credits plus the transition credits. And you compare in a cash balance plan the pay credit plus the additional transition credit, and you will see that those who are older always got more put into their account than people who were younger. This concept of how you measure the rate of benefit accrual was also the subject of some proposed regulations by the Internal Revenue Service. Those regulations were cited in our 28J letter, not for this proposition, but for a different proposition. And when the Treasury issued those proposed regulations, they suggested that what you do is exactly that. You focus on the rate of benefit accrual by measuring the pay credit, because everybody gets the same interest credit. And so the only issue that we're dealing with there is the number of years you're going to get an interest credit. And, you know, the AJAX says don't adopt stigmatizing stereotypes by assuming that somebody who is 50 isn't going to work another 35 years. You know, that could happen. And if they do, if they do work another 35 years, what you find out is that that employee's annuity will be larger than the 30-year-old who waited 35 years. Because by the time I reach 35 years in the future, I'll be 85, and the life expectancy of somebody 85 is shorter. I mean, you can see all kinds of unusual examples. If you compare, since most of these plans do, the lump sum value that will be paid to people. If I put $10,000 into an account for a 30-year-old and $10,000 into an account for a 50-year-old, guess what? Their immediate lump sum is going to be identical. But if I then say, how about the immediate annuity that will be payable to them? The immediate annuity payable to the 50-year-old will be larger because the life expectancy of the 50-year-old is smaller. All of these alternatives for measuring the rate of benefit accrual essentially hold years to payout constant. And if you hold years to payout constant, you can see that the older employee always does as well or better than the younger employee in this cash balance plan. Is the half to 6.5% necessary to make this thing work? No, it is not, Your Honor. It's really part of what I was trying to get at. What is the significance of the half to 6.5%? It's a sweetener. It's nice, but it's not necessary? It's not. It might be a mitigating factor if you were to go into the theory. It's not. You don't need it under my legal theory. That's correct. Okay. The other issues that were raised in this case and that have come up lately is a claim of reverse discrimination under Section 623A. I thought they disavowed that claim. I'm sorry. Had they disavowed that claim? I did not get notice of that. Okay. That's fine. I thought so. Or maybe I'm wrong. That's what the record showed me. I would address that because we did it before the Klein case was decided. The law on that point was, as Mr. Spencer argues, was saying that there was no such thing. But then when Klein was decided by the Sixth Circuit and said that there was such a thing, we did raise it in our brief. It was disavowed in the district court, I believe. That is correct. It was disavowed. And, frankly, I would tell you that we raised the defense under Section 623F-2, which is that we can follow the terms of a bona fide employee benefit plan. That would be an equal defense to any claim of reverse age discrimination under Section 623A. Plus, I would point out, as this Court had determined in a case called Stone v. Travelers Corporation, that 623L1 provides a further defense to any reverse discrimination claim. So whether it was disavowed in the district court and somehow resurrected, I believe this Court doesn't have to reach those issues because 623F and 623L1 provide alternative and absolute defenses to any claim of reverse discrimination. I thought it was disavowed in the opening brief. Your Honor, I believe it was disavowed, but I believe that after all the briefs were submitted, the Klein case came down, and plaintiffs' appellants raised that. Now, Klein is mentioned in the opening brief. On page 14 of the opening brief, it says, Plaintiffs did not claim reverse age discrimination, and even had they done so, that should not have defeated their claim. Whether it's raised or not, I think that we can put the issue to bed because I think 623F and 623L answer that, and this Court will not have to grapple with the issues that the Supreme Court is going to decide. There was one other aspect of the summary judgment decision. That involved an alleged breach of fiduciary duty by the plan. The judge concluded correctly that there was no claim for breach of fiduciary duty because, one, you need a fiduciary before you can find a breach of fiduciary duty, and the plan itself is not a fiduciary. Secondly, the act of amending a plan is a settler function, not a fiduciary function, and therefore, it is one that should not be subject to the fiduciary standards of review. With those points, if there are no questions from the Court. Kennedy, where does that leave you? All right. Let's assume you're correct.  Where does that leave the claim? Totally gone or? Yes. Yes. There had been claims against others which had been dismissed and a motion to dismiss. Those are not before the Court since there was no appeal taken from that. What is left of the ADEA claim? There is nothing left of the ADEA claim. Because it's based on a fiduciary duty? No, no, no. The ADEA claim was alleged a violation of six points. Oh, I'm sorry. That was the ERISA claim. That's the ERISA claim. Yes, Your Honor. Does that dispose of the entire 105.4g claim? The 105.4g. That's probably the two sets of numbers. No, 1054.g is the reduction in the rate of benefit accrual, which we talked about earlier, Your Honor. And that claim still survives? No, that claim was not. No, I don't mean survives. That's not disposed of by the breach of fiduciary duty. That is correct, Your Honor. That's a separate claim. That is a separate claim which I addressed previously. As I noted, the design of the plan expressly preserves the benefits that have been approved to date. I have something from this complaint to determine what claims there actually are. The complaint seems to have only two claims, one for unlawful age discrimination under 621, and one for breach of fiduciary duty under 29 U.S.C. 1054.g. At least that's the caption of the two claims. Yes, Your Honor. I can't defend the way the complaint was written, but the lower court parsed those issues and came to the conclusion that the ERISA claims really presented two different  issues. One was an alleged violation of a reduction of an approved benefit in violation of 29 U.S.C. 1054.g. and also a claim that the plan had somehow breached its fiduciary duty. Okay. And so I submit to you that those are correct. Finally, I would just note that with respect to the Rule 16 issue, two judges on this Court have addressed and held that the standard of review is for abuse of discretion and that the touchstone here is a showing of good cause and the good cause element requires a showing of diligence. The record is quite clear that plaintiffs were not diligent in their discovery efforts and that even if that discovery dispute was resolved, it really would have no impact on the pending issues before this Court. Counsel didn't argue that in the opening argument. You're a minute over already, so. I apologize. Thank you, counsel. I have nothing further unless the Court has some questions. I just have one question. I've been having trouble following the claims. In your opening brief, under item 4G, it says the – not 4F. Plaintiff's seventh claim should have survived a summary judgment motion. I only find two claims in the complaint, unless I've got the wrong complaint. Well, we started out with seven causes of action, and I think five of them were dismissed on a motion, a 12B6 motion. So by the seventh claim, you mean? The last one. Yeah, it's the second one. The second claim. Correct. Okay. That's correct, Your Honor. Thank you. Thank you. Our case just argued will be submitted. Final case for.
judges: Reinhardt, Fernandez, Rawlinson